**20-1373UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

────────────────────────────

NATALIA FERRANDO-DEHTIAR,

                 Plaintiff,

    v.                                         1:20-cv-01373 (AMN/CFH)

ANESTHESIA GROUP OF ALBANY, P.C.,
PETER ANDRIAKOS, individually, DERRICK R.
WURL, individually, and LANCE WILKINS,
individually,

                 Defendants.

────────────────────────────

**APPEARANCES:**                              **OF COUNSEL:**

**PHILLIPS & ASSOCIATES, PLLC**      **STEVEN J. FINGERHUT, ESQ.**
45 Broadway, Suite 430             **DORINA CELA, ESQ.**
New York, NY 10006
*Attorneys for Plaintiff*

**GLEASON, DUNN, WALSH & O'SHEA**    **LISA F. JOSLIN, ESQ.**
300 Great Oaks Boulevard, Suite 321    **KATHRYN DANIELS BOBEL, ESQ.**
Albany, NY 12203               **RONALD G. DUNN, ESQ.**
*Attorneys for Defendant Anesthesia Group of*
*Albany, P.C.*

**BOND, SCHOENECK & KING, PLLC**    **MICHAEL D. BILLOK, ESQ.**
268 Broadway, Suite 104           **ERIC M. O'BRYAN, ESQ.**
Saratoga Springs, NY 12866
*Attorneys for Defendants Peter Andriakos and*
*Lance Wilkins*

**BARCLAY DAMON LLP**            **MICHAEL J. MURPHY, ESQ.**
80 State Street                   **BENJAMIN M. WILKINSON, ESQ.**
Albany, NY 12207
*Attorneys for Defendant Derrick R. Wurl*

**BARCLAY DAMON LLP**            **ROSS M. GREENKY, ESQ.**
125 E. Jefferson Street
Syracuse, NY 13202
*Attorneys for Defendant Derrick R. Wurl*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

On November 11, 2020, Dr. Natalia Ferrando-Dehtiar ("Plaintiff") commenced this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq*. ("NYSHRL"); and New York common law, against Defendants Anesthesia Group of Albany, P.C. ("AGA"), Dr. Peter Andriakos ("Defendant Andriakos"), Dr. Derrick R. Wurl ("Defendant Wurl"), and Dr. Lance Wilkins ("Defendant Wilkins") (collectively "Defendants"), alleging that: (1) Defendants failed to promote her, subjected her to a hostile work environment, retaliated against her, and discriminatorily discharged her; (2) Defendants Andriakos, Wurl, and Wilkins aided and abetted such discriminatory conduct; and (3) Defendant Wurl subjected her to assault and battery.  *See generally* Dkt. No. 1 (the "Complaint").  Presently before the Court are Defendants' motions for summary judgment, which collectively seek to dismiss all claims against Defendants.  Dkt. Nos. 55-58 (the "Motions").  Plaintiff filed an Opposition to each of the Motions, Dkt. Nos. 61-77, and Defendants each filed Replies in support of their respective Motions, Dkt. Nos. 83-86.

For the reasons set forth herein, each Motion is granted in part and denied in part.

## II.     BACKGROUND[1]

### A.     The Parties

Plaintiff was hired as an employee anesthesiologist by AGA in September 2009, after she

---

[1] Unless otherwise indicated, the following facts have been asserted by the parties in their Statements of Material Facts with accurate record citations, and have been expressly admitted or not denied with a supporting record citation in response.  The Court has also considered the parties' other submissions and attached exhibits.  *See generally* Dkt. Nos. 55-58, 61-77, 83-86.

completed an anesthesiology residency at the State University of New York at Buffalo earlier that year.  *See* Dkt. No. 85-1 at 2.[2]  Plaintiff's employment at AGA was governed by a series of three-year contracts, executed in 2009, 2012, 2015, and 2018.  *Id*. at 13.  During her employment with AGA, Plaintiff primarily provided anesthesia services at Samaritan Hospital, Saratoga Hospital, and Saratoga Surgery Center, however she also worked at several additional facilities as requested by AGA.  *Id*. at 15.  Plaintiff worked for AGA as an employee anesthesiologist until May 20, 2020. *Id*. at 2.

AGA is a domestic professional corporation organized and operating under the laws of the State of New York and located in Albany, New York.  *Id*. at 1.  AGA's medical providers include partner anesthesiologists, employee (or non-partner) anesthesiologists, and Certified Registered Nurse Anesthetists ("CRNAs").  *Id*.  AGA's day-to-day management is overseen by the president of its board.  *Id*. at 4.  AGA's president is "require[d]" "with legal counsel and management to conduct the day-to-day business and ensure compliance with all legal aspects of the medical practice."  *Id*.  At least from 2018 to 2020, "incidents of harassment could be reported to an immediate supervisor, the AGA president or AGA's Chief Operating Officer" and if a complaint was against an immediate supervisor, the complaint could be made to the AGA president.  *Id*. at 4-5.  The AGA president, upon receiving a complaint of harassment, is required to assess the need for immediate corrective action, such as ensuring the individuals involved are not staffed at the same facilities, and refers the complaint to AGA's legal counsel.  *Id*. at 6-7.

Defendant Andriakos joined AGA as an anesthesiologist in 1990 and was a partner and member of the AGA board of directors from 1994 until the end of 2020.  *Id*. at 2.  Defendant

---

[2] Citations to docket entries, including deposition transcripts, utilize the pagination generated by CM/ECF, the Court's electronic filing system.

Andriakos was the president of AGA's board from some time in 2006 until July 2018.  *Id*. at 2-3. As president, Defendant Andriakos "was in charge of recruiting, interviewing, hiring, overseeing administrative personnel at all hospitals, attending executive committee meetings and AGA Board meetings, resolving any human resources issues and overseeing AGA financials along with the Chief Financial Officer."  *Id*.  In his capacity as president, Defendant Andriakos initially interviewed Plaintiff for an employee anesthesiologist position in 2009.  *Id*. at 9

Defendant Wilkins joined AGA as a *per diem* anesthesiologist in 2003 and became an AGA employee anesthesiologist in 2005.  *Id*. at 3.  Defendant Wilkins became an AGA partner and member of its board in 2013, and he replaced Defendant Andriakos as AGA's president in July 2018.  *Id*.  As president, Defendant Wilkins "managed AGA, including orchestrating and managing AGA's executive committee and AGA Board members, alongside the Chief Operating Officer." *Id*.

Defendant Wurl became an AGA partner and member of the board in or around 2008 and served in that capacity until the end of 2021.  *Id*. at 3-4.  Defendant Wurl served as AGA's Chief of Anesthesia for the Saratoga facilities, Saratoga Hospital and Saratoga Surgery Center, from in or around 2008 through the end of 2021.  *Id*.

### B.   Plaintiff's Allegations

#### 1.   Failure to promote to partnership at AGA

Plaintiff maintains that she communicated her desire to become a partner at AGA from the time of her initial interview with Defendant Andriakos in 2009.  Dkt. No. 73 at 2-3.  Minutes from a regular board meeting on August 29, 2011, confirm that AGA's board was aware at that time that Plaintiff desired to become an AGA partner once she had the qualifications that AGA's board deemed necessary.  Dkt. No. 57-4 at 98-100.  Furthermore, on June 4, 2019, an AGA partner

named Dr. LaGrave emailed Defendant Wilkins and noted that "[a]s part of long term partnership planning, we need to discuss whether or not to offer [Plaintiff] a buy in." Dkt. No. 55-25 at 2. And minutes from a June 2019 AGA board staffing and scheduling committee meeting indicate that the committee recommended that the AGA board vote on both Dr. Haddad and Plaintiff for partnership-track positions. Dkt. No. 58-6 at 67-74.

From the time Plaintiff joined AGA in 2009 through her departure in May 2020, all AGA partners were men,[3] and at least four additional men were offered and obtained partnership positions at AGA: Dr. Dunkerley in 2014, Drs. Swenson and Walker in 2017, and Dr. Haddad in 2019. Dkt. 55-44 at 18-19. Each of Drs. Dunkerley, Swenson, and Walker had cardiac specialized anesthesia experience that Plaintiff did not have.[4] *See* Dkt. No. 55-43 at 10. However, Plaintiff maintains that she could obtain the requisite specialized cardiac experience, either through a formal fellowship or through other certification, and she communicated with at least Defendant Andriakos during this time about which course of qualifications she should pursue. *See* Dkt. No. 57-4 at 84-85. Notes from a meeting on or about March 3, 2011, between Defendant Andriakos, Plaintiff, and AGA's then-Chief Operating Officer confirm that Defendant Andriakos told Plaintiff that a cardiac fellowship might not be necessary, but a Trans Esophageal Echocardiograms ("TEE") certification, a separate indicator of proficiency in cardiac anesthesiology, would be. Dkt. No. 55-20 at 44-45; Dkt. No. 56-7 at 56-59. To that end, Plaintiff took steps to obtain a TEE certification

---

[3] The parties dispute whether a female anesthesiologist, Dr. Jennifer Whitmore, was offered a partnership position with AGA prior to or around when Plaintiff began working at AGA; but in any event the parties acknowledge she never became an AGA partner because she chose to leave the group. *See* Dkt. No. 57-2 at 205-07; Dkt. No. 86 at 8.

[4] The parties do not dispute that AGA generally considered anesthesiologists to specialize in "regional anesthesiology," a more generalist specialty, or in "cardiac anesthesiology," for which AGA and sometimes its client businesses had particular requirements. *See* Dkt. No. 57-35 at 10; Dkt. No. 61 at 14; Dkt. No. 83-3 at 6.

in 2014 by taking courses and traveling to educational events, and she obtained the basic TEE certification but not the advanced certification.  Dkt. No. 57-2 at 177-81.

Defendant Andriakos testified that Plaintiff might have been able to become a partner based on her regional anesthesiology skills "[l]ater on in her career."  Dkt. No. 57-4 at 77-78.  Any partner could propose a candidate for partnership, and offers were made based on a majority vote of AGA's partners.  Dkt. No. 85-1 at 22.  However, Plaintiff testified that Defendant Andriakos, in his capacity as president of AGA and the individual with whom she dealt when negotiating her employment contracts, told her she would be considered each time there was an open partnership-track position.[5]  Dkt. No. 57-2 at 181-82.  Yet no meaningful consideration materialized, and Plaintiff was never offered a partnership-track position.  *Id*.  Plaintiff further testified that Defendant Andriakos and others had made comments to the effect of "we [the AGA board] don't want females at the table."  Dkt. No. 57-2 at 198-99, 350-51.  Defendants did, however, place another individual with regional anesthesiology skills, Dr. Haddad, in a partnership-track position in October 2019.  Dkt. No. 85 at 6.  Defendants maintain that "Dr. Haddad was placed on the AGA partnership track because he presented a business opportunity with respect to AGA's acquisition of anesthesia services at a medical facility."  Dkt. No. 55-43 at 17; *see also* Dkt. No. 85 at 6 (describing how a preexisting AGA "anesthesia team was moved . . . to [a] newly created facility" which facility "requested that Dr. Haddad remain on the team and be identified as the future chief

---

[5] AGA's practice was to hire anesthesiologists as employees and then put them in a partnership-track position, where they worked and earned their partnership share over a period of generally seven or eight years, and occasionally AGA hired individuals to be partners in which case they were put directly in a partnership-track position.  *See* Dkt. No. 58-5 at 23 (Defendant Wilkins completed a seven-year partnership track in 2013); *id*. at 44-46 (noting that the AGA board has discretion over the length and terms of partnership-track positions); Dkt. No. 58-8 at 32-35 (Defendant Wurl explaining a partnership-track position offered to Dr. Dunkerley—comprised of a three-year salary period followed by a five-year buy-in period when a partner starts to acquire shares and attend board meetings—after he tendered his resignation to the AGA board).

of anesthesia for the facility").  Defendant AGA admits that "Dr. Haddad graduated medical school in 2019 and was a recent graduate when he was offered a [partnership-track] position."  Dkt. No. 83-2 at 9-10.

### 2. Hostile work environment

Plaintiff testified that she experienced ongoing gender-based harassment during much of her time working at AGA.  *See, e.g.*, Dkt. No. 70 at 25-26In addition to Defendant Wurl, Plaintiff testified that three other AGA physicians harassed her.  *See id.*  However, Plaintiff has provided somewhat sparse details concerning these alleged instances of harassment, i.e., while she has generally described the conduct at issue, she has not identified the timing of most of the harassment or provided corroborating admissible evidence.  *See*, *e.g.*, *id.*; *see also*, *e.g.*, Dkt. No. 57-3 at 48 (Plaintiff acknowledges that she did not formally complain about several alleged instances of this conduct).[6]

As to Defendant Wurl, who was one of Plaintiff's supervisors as the chief AGA partner in charge of the Saratoga facilities, Plaintiff has alleged several specific instances of harassment as well as a general course of conduct from approximately 2015 through November 2019.  *See* Dkt. No. 70 at 26-27; Dkt. No. 56-4 at 291-97 (Plaintiff testifying that starting in 2015, Defendant Wurl "was more inappropriate, and more frequently . . . making more inappropriate comments and was just micromanaging me and just following me everywhere where it was just too much" including by "texting [her], harassing [her], touching [her], disrespecting [her] in front of all [operating room] staff and nurses, asking [her] about [her] . . . clothes, [her] lips, [her] shoes, [and her] private life").  The main focus of Plaintiff's hostile work environment allegations concern Defendant

---

[6] At least with respect to one non-partner physician Plaintiff identifies as having harassed her, AGA apparently terminated his employment following Plaintiff's complaint.  Dkt. No. 57-4 at 56; Dkt. No. 83-3 at 14.

Wurl's conduct towards Plaintiff at a September 7, 2019, wedding afterparty for another AGA physician.[7]  Dkt. No. 57-3 at 61-80.  Plaintiff testified that she spent approximately an hour at the reception and during that time, Defendant Wurl put his arm around her waist, grabbed her buttocks, held her hand to prevent her from leaving his company, and grabbed her arm to prevent her from leaving with a CRNA whom Plaintiff had driven to the event.  *Id*. at 61-72.  Plaintiff understood Defendant Wurl to be intoxicated and unable to control himself.  *Id*. at 82.  Following that night, and through the time of Plaintiff's November 2019 complaint to Defendant Wilkins, she maintains that Defendant Wurl behaved inappropriately toward her by commenting on her clothing and appearance when they worked alongside each other at the Saratoga facilities where Defendant Wurl was the AGA chief of anesthesia.  *Id*. at 88; Dkt. No. 77 at 12-14.  Plaintiff acknowledges that after her November 1, 2019, complaint to Defendant Wilkins, Defendant Wurl ceased his harassing conduct.  Dkt. No. 57-3 at 201.

Defendant Wurl largely contradicts Plaintiff's version of events.  He acknowledges at least some of his conduct at the wedding afterparty, Dkt. No. 56-18 at 5, which a non-party CRNA also observed, Dkt. No. 56-7 at 79-80, 83.  Apart from that acknowledgement, he disputes Plaintiff's assertions regarding his conduct at the afterparty and focuses on the lack of corroborating evidence by observers at the event who might have seen such conduct, as well as Plaintiff's own text message communications with Defendant Wurl following the incident.  *See* Dkt. No. 56-19 at 19-20.  These messages included use of emojis and did not express any anger, frustration, or fear related to the alleged inappropriate contact.  *Id*.

---

[7] Plaintiff also testified to a separate incident at another wedding afterparty that occurred sometime in 2015 to 2018, where Defendant Wurl inappropriately raised his voice and physically held Plaintiff in an attempt to prevent her from leaving that event.  Dkt. No. 57-2 at 232-37.

### 3.   Retaliation

Plaintiff spoke with Defendant Wilkins on November 1, 2019, concerning her belief she was again passed over for partnership in favor of Dr. Haddad because of her gender and to report harassment by Defendant Wurl, including his conduct at the September 7, 2019, wedding afterparty.  Dkt. No. 57-5 at 86-88.  Within days after Plaintiff made this complaint, Defendant Wurl facilitated the generation or sharing of numerous complaints about Plaintiff from facilities which Defendant Wurl oversaw.   Notably, prior to these complaints, AGA has no contemporaneous record of any complaints made against Plaintiff from 2015 onward.  *See* Dkt. No. 55-1 at 3-4; *see also* Dkt. No. 55-20 at 35-37.[8]  Plaintiff also testified that she believed her schedule at the Saratoga facilities was adjusted in retaliation for her complaint about Defendant Wurl.  Dkt. No. 56-3 at 251-53.[9]

On or about November 6, 2019, AGA initiated an investigation through outside counsel to review Plaintiff's allegations, although Plaintiff did not participate when invited.  Dkt. No. 55-30 at 3.  The first investigation was completed on November 19, 2019.  *Id*. at 2.  Plaintiff then submitted a second complaint to Defendant Wilkins on January 14, 2020, again concerning Dr. Haddad's partnership offer and Defendant Andriakos's alleged comments to Plaintiff that AGA's board did not want female members.  Dkt. No. 57-2 at 197-98.  In response to the second complaint, AGA initiated a second investigation with outside counsel and this time Plaintiff did participate, so the investigation revisited the allegations in the first complaint, as well.  *See* Dkt.

---

[8] Defendant Wurl testified that he had handled several complaints against Plaintiff via direct communication with her, including in August 2019, without involving the AGA board.  Dkt. No. 56-18 at 4-5.  Defendant Wurl forwarded the August 2019 complaints as part of the investigation following Plaintiff's November 2019 and January 2020 complaints to AGA.  Dkt. No. 55-20 at 41.

[9] Defendant Wurl acknowledges Plaintiff's work schedule changed, but notes that it was due to "short staffing."  Dkt. No. 56-18 at 6.

No. 55-20. The result of both of these investigations was a determination that Plaintiff's complaints were without merit.[10] *Id*. at 37-40; Dkt. No. 55-30 at 8.

On November 22, 2019, shortly after the first investigation was completed, Plaintiff emailed Defendant Wilkins a "letter as notice of [her] resignation from [her] position as staff anesthesiologist" with AGA. Dkt. No. 55-20 at 53-54. Three days later, on November 25, 2019, Defendant Wilkins emailed confirmation of acceptance of her resignation. *Id*. Several weeks later, on January 13, 2020, Plaintiff attempted to rescind her resignation from AGA. *Id*. at 55. Defendant Wilkins informed Plaintiff that the AGA board would have to vote on the issue. Dkt. No. 55-44 at 25. At an AGA board meeting in March 2020, the AGA board voted against accepting Plaintiff's resignation rescission, choosing instead to hold her to a May 2020 separation date based on her November 2019 resignation. *Id*. AGA board members, including the individual Defendants, noted that their "no" votes were based on factors including complaints the board or its members received "about plaintiff's workplace conduct[,]" "negative impression[s] when plaintiff attempted to leverage an opportunity" at a competitor to negotiate a salary increase for her 2018 contract, the fact that Plaintiff had resigned, and the COVID-19 pandemic. Dkt. No. 55-43 at 15; Dkt. No. 57-34. On or around April 10, 2020, Defendant Wilkins notified Plaintiff that AGA would not allow her to rescind her resignation. Dkt. No. 55-34 at 2. As a result, Plaintiff left her employment with AGA on May 20, 2020, six months after her November resignation email. Dkt. No. 55-43 at 15.

## C.   The Instant Action and Motions

Plaintiff's Complaint alleged a total of twenty-five claims against the four Defendants: (a) Title VII failure to promote, hostile work environment, retaliation, and discriminatory discharge

---

[10] The complaints about Plaintiff that Defendant Wurl forwarded to Defendant Wilkins and others were included in both investigation reports. *See* Dkt. No. 55-30 at 9-12; Dkt. No. 55-20 at 41-42; 56-57.

claims against AGA; (b) NYSHRL failure to promote, hostile work environment, retaliation, and discriminatory discharge claims against all Defendants; (c) NYSHRL aiding and abetting discrimination claims against Defendants Andriakos, Wilkins, and Wurl; and (d) New York assault and battery claims against Defendant Wurl. *See* Dkt. No. 1 at ¶¶ 248-84.[11]  On January 7, 2021, Defendant Wurl filed an Answer to the Complaint, Dkt. No. 11, and Defendants AGA, Andriakos, and Wilkins together filed an Answer to the Complaint, Dkt. No. 13.  Following the completion of discovery, Defendants filed their respective Motions.  Dkt. Nos. 55-58.

## III.   STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter

---

[11] Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and on September 29, 2020, the EEOC sent Plaintiff a right to sue letter.  Dkt. No.1-1.

of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). A court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.    DISCUSSION

In her oppositions to the Motions, Plaintiff elected not to pursue her: (1) discriminatory discharge claims against all Defendants; (2) hostile work environment claims against Defendants Andriakos and Wilkins; and (3) failure to promote claim against Defendant Wurl. *See* Dkt. No. 61 at 7; Dkt. No. 65-1 at 7; Dkt. No. 70 at 7; Dkt. No. 77 at 8. Accordingly, the Court grants the Motions as to these claims, and only considers the Motions with respect to the claims Plaintiff has maintained: (a) Title VII failure to promote, hostile work environment, and retaliation against AGA; (b) NYSHRL failure to promote against Defendants AGA, Andriakos, and Wilkins; (c) NYSHRL hostile work environment against Defendants AGA and Wurl; (d) NYSHRL retaliation against all Defendants; (e) NYSHRL aiding and abetting discrimination against Defendants Andriakos, Wilkins, and Wurl; and (f) New York common law assault and battery claims against Defendant Wurl.

### A.   *McDonnell Douglas* **burden shifting**

Plaintiff's Title VII and NYSHRL discrimination and retaliation claims are "analyzed under the burden-shifting analysis articulated" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Atkins v. Walmart, Inc.*, No. 6:20-CV-1217 (ATB), 2022 WL 1320300, at *6 (N.D.N.Y. May 2, 2022), *aff'd*, No. 22-1192, 2023 WL 3361807 (2d Cir. May 11, 2023); *accord King v. Aramark Servs. Inc.*, No. 22-1237, 2024 WL 1188985, at *11, *13 (2d Cir. Mar. 20, 2024). At summary judgment, under the so-called *McDonnell-Douglas* burden-shifting analysis:

> a plaintiff is first obligated to establish a prima facie case of discrimination or retaliation.   If the plaintiff is able to sustain that burden, the employer must then "produce" (not prove) a legitimate and non-discriminatory (or non-retaliatory) rationale for any adverse actions taken toward the plaintiff.   The burden then shifts back to the plaintiff to prove that the legitimate rationale offered up by the employer is, in fact, a pretext, unworthy of belief and offered up as "cover" for prohibited discrimination.   Only when the plaintiff meets this burden can he sustain a claim for discrimination or retaliation in the context of a summary judgment motion.

*Atkins*, 2022 WL 1320300, at *6 (citing *McDonnell Douglas*, 411 U.S. at 802-03; *Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (summary order)).   "The ultimate burden of persuading the trier of fact that [a] defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."   *Id.* (quoting *Borzon v. Green*, 778 F. App'x 16, 18 (2d Cir. 2019)).   At the third step, a plaintiff's burden is to "establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination."   *Wheeler v. Praxair Surface Techs., Inc.*, No. 21 CIV. 1165 (PAE), 2023 WL 6282903, at *14 (S.D.N.Y. Sept. 26, 2023) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019)).   A plaintiff is not, however, "'required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that a prohibited factor was at least one of the motivating factors' for the decision."   *Id.* (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).   As the Second Circuit has recently explained, both "pretext"

cases and so-called "mixed-motives" cases, where a plaintiff may make "a showing that even if the employer's reason is true, discrimination was still a motivating factor in the employment decision[,]" are properly analyzed under the *McDonnell Douglas* framework.  *Bart v. Golub Corp.*, No. 23-238, 2024 WL 1281069, at *6-8 (2d Cir. Mar. 26, 2024) (discussing the history of the third step "pretext" analysis and concluding that "[w]hile we use 'pretext' as shorthand, we have explained that a more complete characterization of a plaintiff's third-stage burden in mixed-motives cases is to produce 'admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole *or in part* on discrimination.'") (quoting *Walsh v. New York City Housing Auth.*, 828 F.3d 70, 75 (2d Cir. 2016)) (emphasis added).

## B.    Limitations periods

The parties dispute whether the continuing violations doctrine applies to Plaintiff's claims under both Title VII and the NYSHRL, and thus whether the Court can properly consider conduct or occurrences from before the commencement of the applicable limitations periods.  "Under the continuing violation doctrine, if 'specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice, a continuing violation may be found.'"  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). "[A] continuing violation may be found 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'"  *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010) ("a sexually offensive incident within the limitations period permits

consideration of an incident preceding the limitations period only if the incidents are sufficiently related") (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)).  "In deciding whether incidents of harassment and discrimination are sufficiently related, courts have considered factors such as (1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and ([4]) whether the employer took any intervening remedial action."  *Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*, No. 15-CV-03363 (NSR), 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018).  Even where there is no continuing violation, "Title VII does not 'bar an employee from using the prior acts as background evidence in support of a timely claim.'" *Sutter v. Dibello*, No. 18-CV-817(SJF)(AKT), 2021 WL 930459, at *13 (E.D.N.Y. Mar. 10, 2021) (quoting *Morgan*, 536 U.S. 1at, 113); *accord Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015) (finding that plaintiff's allegations of conduct before the limitation period were "plausibly connected to [plaintiff's protected class] and therefore provide[d] a contextual basis for inferring discrimination").

AGA argues that because Plaintiff filed her charge of discrimination with the EEOC on July 9, 2020, the 300-day limitations period for Title VII claims began on September 13, 2019. *See* Dkt. No. 55-43 at 17-18.  As such, AGA posits that the only two actionable events are: (1) the promotion of Dr. Haddad to a partnership-track position in October 2019, and (2) the events surrounding Plaintiff's separation from AGA, which began with her November 2019 resignation email and concluded with her separation in May 2020.  *Id*. at 18.  Similarly, AGA and the individual Defendants argue that Plaintiff's NYSHRL claims are limited to events occurring on or after March 22, 2017.[12]  *Id*. at 18-19; Dkt. No. 56-19 at 18; Dkt. No. 57-34 at 7-8; Dkt. No. 58-34

---

[12] AGA reached this number by taking into account two periods of tolling: "first, while plaintiffs

at 8-9.[13]   Accordingly, Defendants acknowledge that the following NYSHRL claims are timely: (a) the promotions of Drs. Walker and Swenson to partnership-track positions, (b) Defendant Wurl's alleged conduct at the September 7, 2019 wedding afterparty, and (c) the two events that also fit within the Title VII limitations period. *See* Dkt. No. 55-43 at 18-19.  The Court agrees with Defendants.

The continuing violation doctrine does not apply to Plaintiff's failure to promote claims. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) ("The law is clear that . . . promotion claims may not be based on discrete acts falling outside the limitations period.") (citing *Morgan*, 536 U.S. at 114); *Allen v. N.Y.C. Dep't of Env't Prot.*, 51 F. Supp. 3d 504, 510 (S.D.N.Y. 2014) (multiple instances of failure to promote cannot together form continuing violation even when "same employee has been repeatedly denied a position"); *see also King*, 2024 WL 1188985, at *8 ("an untimely discrete act claim [such as failure to promote,] cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes that discrete act") (citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)).  Dr. Haddad's promotion is the only one that falls within the Title VII limitations period. Accordingly, with respect to Plaintiff's Title VII failure to promote claim, the Court only considers the partnership position offered to Dr. Haddad and not to Plaintiff, and prior partnership positions for which Plaintiff was not selected may provide background to the claim. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) (failure to promote claims cannot be brought

---

EEOC charge was pending, from July 9, 2020 to September 29, 2020; and second, due to the Executive Orders issued by Governor Cuomo during the COVID-19 pandemic, which tolled limitations periods for 228 days, from March 20 to November 3, 2020."  Dkt. No. 55-43 at 18.

[13]  Although Defendants Andriakos and Wilkins refer in their briefs to a limitations period commencing on March 22, 2018, the substance of their respective arguments confirms that they intend to only dispute consideration of acts that occurred prior to March 22, 2017.  *Compare* Dkt. No. 57-34 at 7; Dkt. No. 58-34 at 8, *with* Dkt. No. 57-34 at 8; Dkt. No. 58-34 at 9.

within statutory limitations period via continuing violation doctrine "even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period"). As for Plaintiff's NYSHRL failure to promote claims, the Court considers the alleged actionable promotions of Drs. Swenson, Walker, and Haddad, with the earlier promotion of Dr. Dunkerley providing background to those claims.

The continuing violation doctrine does, however, apply to Plaintiff's hostile work environment claims. "In contrast to claims of failures to promote or compensate, a hostile work environment claim is a paradigmatic 'continuing violation.'" *Wheeler*, 2023 WL 6282903, at *9 (citing *Morgan*, 536 U.S. at 115-17). Therefore, as long as "the hostile work environment claim encompasses at least one act within the limitations period, the acts predating the limitations period are properly considered as part of the claim." *Id.* (citing *McGullam*, 609 F.3d at 75-76). A hostile work environment claim under the NYSHRL is also considered "a single unlawful employment practice," and therefore prior acts "fall into the continuing-violation exception to the statute of limitations." *Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 278-79 (S.D.N.Y. 2010) (citation omitted).

## C.    Failure to Promote

### 1.    Title VII

"Passing over an employee for a promotion is a paradigmatic adverse employment action under the *McDonnell Douglas* framework." *Wheeler*, 2023 WL 6282903, at *14 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (listing "hiring, firing, [and] failing to promote" as examples of adverse employment actions)). "To establish a *prima facie* case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that: '(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking

applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.'" *Petrosino*, 385 F.3d at 226 (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998)).  As to the second factor, "whether the plaintiff is qualified 'refers to the criteria the employer has specified for the position.'" *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 402-03 (S.D.N.Y. 2017) (quoting *Williams v. R. H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004)).  Further, "to be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino*, 385 F.3d at 227; *accord Fox v. Cnty. of Yates*, 657 F. App'x 60, 63 (2d Cir. 2016) (summary order).  Finally, as part of a *prima facie* case, "for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Brown*, 163 F.3d at 710).

AGA does not dispute the first, third, and fourth factors of the analysis, acknowledging that Plaintiff is part of a protected class, was never offered a partnership position, and the open role at issue ultimately went to an individual not in Plaintiff's protected class, as did certain other non-actionable roles.[14]  *See* Dkt. No. 55-43 at 22-24.  As to the second factor, AGA argues that Plaintiff failed to apply for any partnership-track position and only noted her goal of becoming a partner when making her November Complaint to Defendant Wilkins.  *Id*. at 22-23.  Further, AGA argues that Plaintiff was not qualified for the partnership-track positions filled by Drs. Walker,

---

[14] To the extent that AGA argues that Plaintiff was not rejected under the third factor because she never applied for or sought a partnership-track role, *see* Dkt. No. 55-43 at 22-23, that argument is addressed in the analysis of the second factor.

Swenson, or Haddad.  *Id*. at 23-24.  Lastly, AGA argues that Plaintiff cannot establish that any circumstances that give rise to an inference of unlawful discrimination.  *Id*. at 24.

First, the Court finds that Plaintiff has met her "low" initial burden to establish a pr*ima facie* case of discriminatory failure to promote by AGA.  *See de la Cruz v. New York City Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).  Plaintiff has produced evidence in the form of sworn testimony and documentary records that support the contention that she informally applied for an AGA partnership role in the method commonly used by the organization. *See Petrosino*, 385 F.3d at 227; *Wheeler*, 2023 WL 6282903, at *15 (holding that defendant's "failure to promote [the plaintiff] . . . upon his requests for promotion at his yearly review, constituted an adverse employment action").  Furthermore, at least Dr. Haddad, who had similar qualifications and a preexisting relationship with a client business—but significantly less experience than Plaintiff—was chosen for a partnership-track role instead of Plaintiff, allowing for the inference of discriminatory treatment.  *See Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003) (circumstances under which plaintiff was passed over for position gave rise to inference of discrimination where person chosen instead was outside protected class but allegedly less qualified than plaintiff); *Rouse v. City of New York*, No. 08 CV 7419(HB), 2009 WL 1532054, at *7 (S.D.N.Y. Jun. 2, 2009) ("[T]he successful applicants for the promotions that [plaintiff] was denied—none of whom are [in plaintiff's protected class]—are sufficiently similarly situated to [plaintiff] to support 'at least a minimal inference' that the disparate treatment may be attributable to racial discrimination.") (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001)); *Esterquest v. Booz-Allen & Hamilton, Inc.*, No. 97 CIV. 6957 (LMM), 2002 WL 237846, at *5 (S.D.N.Y. Feb. 19, 2002) ("Plaintiff meets the second prong by virtue of her educational background and her long history of satisfactory service for" the defendant).  On the other hand,

AGA has sufficiently met its modest burden of production to proffer legitimate, nondiscriminatory reasons for not promoting Plaintiff, including questions about her conduct on the job and dedication to AGA, and have also proffered a legitimate, business reason for promoting Dr. Haddad. *See supra* § II.B.1; Dkt. No. 55-43 at 23-24.

At the last step of the *McDonnell Douglas* analysis, the Court finds that there are material questions of fact as to whether discrimination was a motivating factor in AGA's failure to promote Plaintiff. As an initial matter, Defendants never formally considered Plaintiff for a partnership-track position, so there are no contemporaneous records as to why she was not offered a partnership-track position. *See* Dkt. No. 55-44 at 19-20; Dkt. No. 56-18 at 3. Further, as described above, documentary evidence in the record—beyond Plaintiff's sworn affidavit and deposition testimony under oath—supports Plaintiff's argument that members of the AGA board knew she wanted to become a partner when AGA next considered filling open partnership slots and that there was at least some informal consideration as to whether the board should vote on offering her a partnership position. *See, e.g.*, Dkt. No. 57-4 at 97-100 (Defendant Andriakos acknowledging AGA board meeting minutes from August 2011 that indicate the board discussed Plaintiff's goal of becoming an AGA partner); Dkt. No. 55-25 at 2 (June 4, 2019 email from AGA partner Dr. LaGrave to then-AGA president Defendant Wilkins stating "we need to discuss whether or not to offer [Plaintiff] a buy in" and noting a concern about sharing the group's financial information with her without a non-disclosure agreement in place); Dkt. No. 58-6 at 67-74 (discussing a June 2019 AGA board staffing and scheduling committee meeting in which the committee recommended that the AGA board vote on both Dr. Haddad and Plaintiff). As to the second part of the second factor, Plaintiff has shown by a preponderance of the evidence that she was or could have become qualified to fill the partnership position given to Dr. Haddad. Nevertheless, the board

did not offer Plaintiff a partnership-track position, but did offer a position to Dr. Haddad, who had similar qualifications but less experience, due to an alleged business opportunity.

In addition to that limited but persuasive direct evidence, the Court considers the complete lack of female partners in AGA as indirect evidence that supports an inference of discrimination, as well.  Although AGA argues that female anesthesiologists were placed in partnership-track positions, the only two examples given by AGA did not result in the individuals completing their buy-in periods and becoming partners, while, over the same time, at least four men were put in partnership-track positions and eventually achieved partnership, which evidence a reasonable jury could use to infer that anti-female discrimination was at play.  *See Solomon v. Fordham Univ. Admin.*, No. 22-887-cv, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) ("background [instances of disparate treatment] may be sufficient so that [defendant's] actions could properly be viewed by a fact-finder as adverse"); *Wheeler*, 2023 WL 6282903, at *15 ("Given the idiosyncratic nature of many work environments, the proof required to give rise to such an inference 'inevitably var[ies] in different employment discrimination cases.'") (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)); *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 374 (S.D.N.Y. 2013) (statistical evidence may support a discrimination claim).

Accordingly, AGA's evidence is insufficient to overcome Plaintiff's assertions of pretext at the final step of the *McDonnell Douglas* analysis.  *See Bart*, 2024 WL 1281069, at *8 ("'[T]he plaintiff's ultimate burden . . . may often be carried by reliance on the evidence comprising the *prima facie* case, without more,' if that evidence is independently sufficient under step three of *McDonnell Douglas*.") (quoting Cro*nin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)).  At the very least, the sufficiency of Plaintiff's legitimate qualifications vis-à-vis Dr. Haddad and whether Plaintiff's gender played a role in the decision not to promote her, as indicated by

Defendant Andriakos's alleged comments to Plaintiff, are questions properly put to the jury.[15]  *See King*, 2024 WL 1188985, at *12 (finding that "the district court erroneously assessed the strength of [plaintiff's] summary judgment evidence" of pretext and noting that the Second Circuit "has said that gender-based comments can serve as evidence that gender played an impermissible role in an adverse employment decision"); *Dingman v. Fuji Japanese Steakhouse Sushi Inc.*, No. 20-CV-4850 (NSR), 2022 WL 4650860, at *10 (S.D.N.Y. Sept. 30, 2022) (holding that, among other reasons, "Plaintiff has sufficiently showed that Defendant's explanation regarding her management style could be found to be pretextual by a reasonable fact finder"); *see also Cadet v. Deutsche Bank Sec. Inc.*, No. 11 CIV. 7964 (CM), 2013 WL 3090690, at *7 (S.D.N.Y. June 18, 2013) (holding that whether Plaintiff's performance evaluation "scores were justified in light of Plaintiff's actual performance" or rather if they were pretext for discrimination "is for the jury to decide"); *Esterquest*, 2002 WL 237846, at *7 ("[U]nless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a *prima facie* case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial.") (quoting *Cronin*, 46 F.3d at 203).  Accordingly, AGA's Motion is denied as to Plaintiff's Title VII failure to promote claim.

### 2.   New York State Human Right Law

The standard for asserting a NYSHRL failure to promote claim sufficient to survive summary judgment is the same as the Title VII standard.  *Yu v. New York City Hous. Dev. Corp.*,

---

[15] It is for the finder of fact and not the Court to determine the earnestness of Defendants' proffered business reason, namely that a preexisting "anesthesia team was moved . . . to [a] newly created facility" and "[a]s part of the preexisting anesthesia team, the [client] requested that Dr. Haddad remain on the team and be identified as the future chief of anesthesia for the facility."  Dkt. No. 85 at 6; *see King*, 2024 WL 1188985, at *13 (pretext questions of fact are for the jury).

494 F. App'x 122, 125 n.5 (2d Cir. 2012) (summary order).  Plaintiff has maintained her NYSHRL failure to promote claim against Defendants AGA, Andriakos, and Wilkins.

The Court denies AGA's Motion as to this claim for the same reasons articulated above in denying the Motion as to the Title VII failure to promote claims.  *See supra* § IV.C.1.  For Defendants Andriakos and Wilkins, the Court first looks at their individual conduct to determine if they can be found individually liable.  "The NYSHRL . . . permit[s] individual liability for discrimination only if the individual qualifies as an 'employer' or 'aided and abetted the unlawful discriminatory acts of others.'"  *Fitchett v. City of New York*, No. 18 CIV. 8144 (PAE), 2021 WL 964972, at *8 (S.D.N.Y. Mar. 15, 2021) (quoting *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020).  For the reasons that follow, the Court finds that Defendants Andriakos and Wilkins were Plaintiff's employers sufficient for a finding of individual liability as to Plaintiff's NYSHRL failure to promote claims.

Defendant Andriakos served as AGA's president from the time Plaintiff began working for the company through July 2018.  As such, his presidency covered two actionable promotions to partnership that Plaintiff argues she should have been considered for and ultimately been given, specifically the partnership positions offered to Drs. Walker and Swenson.  As discussed above, record evidence confirms that Defendant Andriakos was aware of Plaintiff's aspirations to be an AGA partner at the time AGA decided to offer partnership to Drs. Walker and Swenson.  Furthermore, Plaintiff maintains that she followed Defendant Andriakos's guidance on steps she could take to obtain a partnership-track position, including getting additional training or certifications in cardiac anesthesiology—the specialty of Drs. Walker and Swenson, which AGA has used to justify their elevations instead of Plaintiff.  Indeed, Defendants do not refute that Plaintiff attempted to increase her qualifications or that they already considered her a skilled

anesthesiologist.  *See* Dkt. No. 55-44 at 4 (AGA "Board Members generally considered [Plaintiff] to be a clinically skilled anesthesiologist").  The fact that Plaintiff sought additional certification while already holding one of the highest-paid AGA non-partner positions is at least circumstantial evidence from which a reasonable jury could find that Plaintiff was attempting to do what AGA's leadership told her was necessary to become a partner and AGA in turn "moved the goalposts" rather than support her efforts.  Finally, Plaintiff has testified to comments Defendant Andriakos made to Plaintiff to the effect that she would never become a partner in place of a male anesthesiologist.  *See supra* §§ II.B.1, 3; *Bart*, 2024 WL 2024 WL 1281069, at *9 (finding that plaintiff's testimony about remarks made by a supervisor were "sufficient to support a finding of discriminatory motive" and not "stray remarks" where "the comments alleged were (1) made repeatedly, (2) drew a direct link between gender stereotypes and the conclusion that [plaintiff] is ill-suited for her position as a manager, and (3) were made by a supervisor who played a substantial role in the" adverse employment action against the plaintiff) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 n.12 (2d Cir. 2004)); *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) ("The circumstances that give rise to an inference of discriminatory motive include . . . remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus."); *accord Kent-Friedman v. New York State Ins. Fund*, No. 18 CIV. 4422 (VM), 2023 WL 6292693, at *24 (S.D.N.Y. Sept. 27, 2023), *reconsideration denied*, 2023 WL 7280069 (S.D.N.Y. Nov. 3, 2023) ("a jury could properly conclude either that [plaintiff's supervisor's] remark was a relatively meaningless slip of the tongue or that it was probative of a discriminatory atmosphere at [defendant] that contributed to its failure to promote" the plaintiff); *Cadet*, 2013 WL 3090690, at *6.  Taken together, Plaintiff has put forth evidence from which a reasonable jury could find that Defendant Andriakos is individually liable as Plaintiff's employer

for violating the NYSHRL prohibition on discriminatory failure to promote.

Defendant Wilkins served as AGA's president from July 2018, immediately following Defendant Andriakos, through Plaintiff's departure from AGA in May 2020.  In his capacity as AGA's president, Defendant Wilkins had the authority to propose individuals for partnership consideration to the AGA board, and by the same authority, decline to have individuals considered for partnership by the board.  Dkt. No. 58-5 at 29, 41-42.  Defendant Wilkins acknowledges that minutes from a June 2019 AGA committee meeting that he attended indicate that members of the AGA board discussed both Dr. Haddad's and Plaintiff's "partnership potential" however Defendant Wilkins could not recall ever discussing Plaintiff's candidacy for partnership with members of the AGA board.  *See* Dkt. No. 58-6 at 72-74.  As a result, material questions of fact exist from which a jury could find that Defendant Wilkins was personally liable as Plaintiff's employer for AGA's failure to promote Plaintiff due to gender-based discrimination.  Therefore, the Court also denies Defendant Wilkins' Motion as to Plaintiff's NYSHRL failure to promote claim against him.

### D.    Hostile Work Environment Claims

#### 1.    Title VII

"Disparate treatment prohibited by Title VII also encompasses sexual harassment that results in a 'hostile or abusive work environment.'"  *Fitzgerald*, 251 F.3d at 356 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).  "To prevail on a hostile work environment claim, [a plaintiff] must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Payne*, 2022 WL 453441, at *3 (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019)).  The first

element has both an objective and subjective component: "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Banks*, 81 F.4th at 262 (citing *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020)). Additionally, being reprimanded at work by supervisors generally does not, alone, suffice to create a hostile work environment. *Fox*, 918 F.3d at 75. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim . . . ." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013); *accord Tromblee v. New York State Off. for People with Developmental Disabilities*, No. 1:19-cv-00638 (BKS/CFH), 2023 WL 2655471, at *12 (N.D.N.Y. Mar. 27, 2023) ("A tangible employment action constitutes a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'") (quoting *Vance*, 570 U.S. at 424). "An employer is liable for a hostile work environment . . . when the employer knew, or should have known, of the hostile work environment but failed to take appropriate remedial action." *D'Annunzio v. Ayken, Inc.*, 25 F. Supp. 3d 281, 290 (E.D.N.Y. 2014) (citing *Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009); *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

To survive summary judgment, a plaintiff must "produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Banks*, 81 F.4th at 261 (quotation omitted). In assessing this evidence, "[c]ourts review the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *McGullam*, 609 F.3d at 79 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Further, "[i]f a rational juror could infer that a reasonable employee would have viewed a given series of events as materially worsening her working conditions, summary judgment dismissing her hostile work environment claim on the ground of lack of an adverse employment decision is inappropriate." *Fitzgerald*, 251 F.3d at 360.  The evidence can also include conduct that is outside of the physical work environment.  *See Parrish v. Sollecito*, 249 F. Supp. 2d 342, 351-52 (S.D.N.Y. 2003) ("[W]herever a sexual assault occurs, its consequences may be felt in the victim's 'workplace' or 'work environment' and be brought to bear on her terms and conditions of employment. Accordingly, the reach of the employment 'environment' should be viewed holistically.").  However, an attempt to rescind a resignation may "severely undermine[ ] any inference [of] . . . a hostile work environment . . . ." *Cadet*, 2013 WL 3090690, at *12.  Finally, unlike failure to promote claims, "hostile work environment claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test." *McNulty v. Cnty. of Warren, New York*, No. 1:16-CV-843 (NAM/DJS), 2019 WL 1080877, at *9 n.2 (N.D.N.Y. Mar. 7, 2019) (quoting *Matthews v. Corning Inc.*, 77 F.Supp.3d 275, 292 (W.D.N.Y. 2014)).

Viewing the record evidence, including evidence of instances of harassment from before the Title VII limitations period and outside of AGA workplaces, in the light most favorable to Plaintiff, as the Court must, the Court finds that there is insufficient evidence of a hostile work environment as a matter of law.  Plaintiff has argued that several different types of conduct contributed to the alleged hostile work environment beginning in or around 2015: derogatory comments about Plaintiff at AGA's workspaces; physical harassment that occurred to varying degrees at and away from AGA's workspaces; and job assignments that were undesirable or more taxing than expected of comparable employees. *See supra* § II.B.2.  The record adduced through

27

discovery in this matter does not support Plaintiff's allegations of a hostile work environment. Rather, Plaintiff has at best shown conduct that occurred largely outside of the context of the workplace and which was apparently a one-off or very rare (every few years) offensive, inappropriate contact with a supervisor, coupled with derogatory or unpleasant comments at work which did not materially alter Plaintiff's conditions of employment, all prior to Plaintiff's first formal complaint regarding the conduct.  *See Atkins*, 2022 WL 1320300, at *14 (the alleged conduct "reflect a single incident, and were not sufficiently pervasive to support a hostile-work environment claim" and even if they did, "no reasonable fact finder could conclude that [defendant] failed to provide a reasonable avenue for complaint or did nothing about the alleged harassment"); *cf. Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (concluding that summary judgment was not appropriate where reasonable jurors could disagree as to whether the defendant's effort to remedy hostile work environment was effective and prompt).  Further, the record shows that AGA conducted investigations based on Plaintiff's formal complaint, and that after she complained the offensive conduct in the workplace ceased and Plaintiff attempted to rescind her resignation, which undermines her allegations of a hostile work environment.  *See Cadet*, 2013 WL 3090690, at *12; *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006).  Ultimately, the Court finds that Plaintiff's showing is insufficient on the record before the Court for a reasonable jury to find that she suffered from a hostile work environment from 2015 through 2019, or even for portions of 2019, because of her gender.[16]  *See, e.g.*, *McGullam*, 609 F.3d at 77 (finding a comment "insufficiently related" to

---

[16] This finding is consistent with the Court's ruling on Plaintiff's claims concerning discrete instances of discrimination.  *See Cadet*, 2013 WL 3090690, at *10 ("The fact that Plaintiff has raised a genuine issue of material fact concerning discrete instances of discrimination does not mean that he has raised a genuine issue of fact on the issue of whether [defendant] was a hostile work environment. The standard for establishing a hostile work environment is different (and

alleged harassing conduct because it occurred at "a different environment" and "had no relation to the" alleged harassment); *Domingo v. Avis Budget Grp. Inc.*, No. 18-cv-5430 (BMC), 2020 WL 804898, at *3-4 (E.D.N.Y. Feb. 17, 2020) (dismissing hostile work environment claim where "the allegation that [a co-worker] touched plaintiff's buttocks . . . although reprehensible, [ ] was not extraordinarily severe" in light of the caselaw and collecting cases); *Bir v. Pfizer, Inc.*, No. 08-CV-0675S (SR), 2011 WL 13130643, at *14 (W.D.N.Y. Aug. 19, 2011), *aff'd*, 510 F. App'x 29 (2d Cir. 2013) (holding that the plaintiff "failed to come forward with evidence, in admissible form, sufficient to defeat defendant's motion for summary judgment on her hostile work environment claim").  Given the insufficiently pervasive conduct at issue, AGA's investigations of Plaintiff's complaints, the uncontroverted cessation of offensive conduct after Plaintiff formally complained, and Plaintiff's attempted rescission of her resignation, AGA has shown its entitlement to summary judgment on Plaintiff's Title VII hostile work environment claim.

### 2.   New York State Human Right Law

The parties rightly observe that the 2019 amendments to the NYSHRL affect the analysis of Plaintiff's hostile work environment claims.  Prior to the 2019 amendments, hostile work environment claims under the NYSHRL were governed by the same standard as Title VII claims. *Summa v. Hofstra Univ.,* 708 F.3d 115, 123-24 (2d Cir. 2013) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir.2006)).  "[O]n October 11, 2019, amendments to the NYSHRL came into effect that eliminated the 'severe and pervasive' standard" borrowed from the Title VII analysis, in favor of the more forgiving New York City Human Rights Law ("NYCHRL") standard.  *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 CIV 02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (citing N.Y. Exec. Law § 300).  Accordingly, the

---

arguably higher) than that for a simple discrimination claim.") (citations omitted).

NYSHRL now requires a plaintiff to establish that she was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories." *Wheeler*, 2023 WL 6282903, at *10 (quoting N.Y. Exec. Law. § 296(1)(h)).  Plaintiff has maintained her NYSHRL hostile work environment claims against Defendants AGA and Wurl.

Having found that Plaintiff has insufficiently alleged a Title VII hostile work environment claim, the Court similarly finds that Plaintiff cannot maintain her claims under the NYSHRL based on alleged inferior terms, conditions or privileges of employment.[17]  *See, e.g.*, *id.* at *12.  Indeed, the crux of Plaintiff's allegations do not concern conditions of employment but conduct that occurred outside of the context of the workplace and which was apparently a one-off or very rare (every few years) unpleasant contact with a supervisor, which offensive conduct ceased following Plaintiff's first formal complaint regarding the conduct.  Additionally, Plaintiff's attempt to rescind her resignation notwithstanding her concerns about her employment conditions at AGA undermines her NYSHRL claims too.  *See, e.g.*, *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015) (affirming dismissal of NYCHRL claims where the plaintiff "failed to raise a genuine dispute about whether" complaints against her were made in good faith).  As such, Plaintiff has not put forth evidence from which a reasonable jury could find that Plaintiff's course of employment at AGA from 2015 through November 2019 was properly characterized as a hostile work environment.  *See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 80 (1st Dep't 2009) (finding that under the NYCHRL, "summary judgment will still be available where [defendants] can prove that the alleged discriminatory conduct in question does not represent a 'borderline' situation but one that could only be reasonably interpreted by a trier of fact as representing no more

---

[17] With respect to the 2019 amendment to the NYSHRL, the Court finds that even when considered under the more permissive post-amendment standard, the record evidence does not support Plaintiff's NYSHRL claims of hostile work environment.

than petty slights or trivial inconveniences"). Accordingly, the Court grants AGA's and Defendant Wurl's Motions as to Plaintiff's NYSHRL hostile work environment claims, as well.

### E.   Retaliation

#### 1.   Title VII

"To make out a *prima facie* case of retaliation, a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa*, 708 F.3d at 125. As to the third factor, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 ("This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: 'The antiretaliation provision, unlike the substantive discrimination provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 64 (2006)). To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Tromblee*, 2023 WL 2655471, at *20 (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)).

The fourth factor "can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019); *accord Whipple v. Reed Eye Assocs.*, 524 F. Supp.

3d 76, 96 (W.D.N.Y. 2021) ("Indirect evidence of causation can include 'temporal proximity' between the protected activity and the adverse job action.").  Any connection is not enough, however; instead, a "plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Kwan v. Andalex Group LLC*, 737 F.3d 834, 835 (2d Cir. 2013) (citing *Univ. of Texas Southw'n Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013)); *accord Tromblee*, 2023 WL 2655471, at *19.  At summary judgment, a plaintiff's burden in establishing their *prima facie* case is "*de minimis*." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Finally, "[a] finding of unlawful retaliation generally does not depend on the merits of the underlying discrimination complaint." *Chavis*, 265 F. Supp. 3d at 408 (citing *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986)).

On the record before it, the Court determines that material questions of fact exist as to whether AGA retaliated against Plaintiff following her November 2019 complaint to Defendant Wilkins.  It is undisputed that Plaintiff has met the first two factors of the claims: her formal complaint to Defendant Wilkins in November 2019 was protected activity, and AGA through Defendant Wilkins was aware of this activity.[18] *See supra* § II.B.3.  Although AGA argues that Plaintiff did not suffer an adverse employment action because she voluntarily resigned from her position, the circumstances surrounding her attempted rescission of the resignation differentiate

---

[18] Plaintiff's allegation that her work assignments were manipulated to give her less desirable shifts is not, however, sufficient to support the instant claim because the assignments were not "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Barrow v. Ford Motor Co.*, No. 03-CV-621A, 2007 WL 1655660, at *19 (W.D.N.Y. June 5, 2007) ("such a change in shifts does not constitute an adverse employment action insofar as the Second Circuit has defined an adverse employment action as 'a materially adverse change in the terms and conditions of employment'") (quoting *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

this case from the cases upon which Defendants rely.  For example, AGA cites *Williams v. PMA Cos.*, 564 F. Supp. 3d 32 (N.D.N.Y. 2021), for the proposition that "if . . . evidence show[s] that Plaintiff resigned and then attempted to rescind his resignation, a failure to accept that recission would not be an adverse employment action as a matter of law." *Id*. at 50.  However, the court in *Williams* explicitly noted that such analysis pertained to a claim of discrimination, while "the standard for what constitutes an adverse employment action under retaliation claims is different than the standard for discrimination claims." *Id*. at 50 n.11.  The court ultimately found questions of material fact as to the issue of adverse action sufficient for the retaliation claim to survive summary judgment, *see id*. at 55-56, but held that on the record before it, the decision to not allow the plaintiff to rescind his resignation was not adverse because, unlike in a Fifth Circuit case plaintiff relied upon, "no one with Defendants ever asked Plaintiff to consider rescinding his resignation, and Defendants did not approve any request to allow Plaintiff to stay on for a significant time past his effective resignation date in a way that would cause him to believe recission of resignation was an option," *id*. at 56 n.15.  This Court finds the present case is more closely analogous to the referenced Fifth Circuit case, *Porter v. Houma Terrebonne Housing Auth. Bd. of Comm'rs*, 810 F.3d 940 (5th Cir. 2015), because refusal to accept the rescission could be adverse if primarily motivated by discriminatory animus.  *See Williams*, 564 F. Supp. 3d at 50 n.11 (noting that *Porter* held that "it depends on the specific facts of the case and whether the failure to accept the recission was retaliatory") (citing *Porter*, 810 F.3d at 947); *see also McDonnell Douglas*, 411 U.S. at 796, 807 (holding that the plaintiff should be allowed "to demonstrate that [the defendant's] assigned reason for refusing to re-employ [the plaintiff] was a pretext or discriminatory in its application" at trial); *cf. Cadet*, 2013 WL 3090690, at *13-14 (finding that an employer's refusal to allow rescission was not adverse in part because it followed the employer

offering the at-will plaintiff the opportunity to reconsider). Here, Plaintiff was under contract through 2021, continued to be an AGA employee for approximately four months after she attempted to rescind her resignation, and AGA took nearly three months to decide not to accept Plaintiff's rescission, all of which might indicate that Defendants' reasons for not rehiring Plaintiff were pretextual. *See supra* § II.B.3. As such, viewing the record evidence in the light most favorable to Plaintiff, the Court denies AGA's Motion as to Plaintiff's Title VII retaliation claim. *See, e.g.*, *Kwan*, 737 F.3d at 845-46 ("'but-for' causation . . . [requires] only that the adverse action would not have occurred in the absence of the retaliatory motive"); *accord King*, 2024 WL 1188985, at *13.

### 2. New York State Human Right Law

"Retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Whipple*, 524 F. Supp. 3d at 95 (quoting *Schiano*, 445 F.3d at 609). As with the Title VII retaliation claim, AGA's Motion with respect to the NYSHRL retaliation claim is denied because Plaintiff has proffered evidence from which a reasonable jury could find that AGA's decision not to allow Plaintiff to rescind her resignation, and their decision not to negotiate with her in any way concerning her separation, was caused by discriminatory animus. The same holds true for the Individual Defendants here, where the record evidence reflects that each condoned AGA's actions with respect to Plaintiff's attempted rescission of her resignation and ultimately voted against the possibility. *See supra* §§ II.B.3; IV.C.2. At best, Defendants' proffered legitimate, nondiscriminatory reasons for opposing Plaintiff's continued employment with AGA, which are disputed by Plaintiff, must be assessed by a jury, which can weigh the evidence and make the necessary credibility determinations. Accordingly, the Motions are each denied as to Plaintiff's claims for retaliation under the NYSHRL.

## F.    Aiding and Abetting Discrimination

"[A] supervisor is an 'employer' and liable under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination'" and "a non-supervisor, or co-worker, may be liable for discrimination, even if they lack the authority to hire or fire the plaintiff, if that person 'aids, abets, incites, compels or coerces the doing of any of the acts forbidden under this article, or attempt to do so.'" *Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492, 495 (E.D.N.Y. 2014) (quoting *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004))  "A co-worker who lacks the authority to either hire or fire the plaintiff may still be held liable as an aider-abettor under NYSHRL § 296(6) if he actually participates in the conduct giving rise to a discrimination claim." *Tromblee*, 2023 WL 2655471, at *15 (quotations omitted).  "In order to be liable under an aiding and abetting theory, 'the aider and abettor must share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose.'" *Id.* (quoting *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020)). Finally, "[t]he Second Circuit has held that individuals can be liable for aiding and abetting discrimination by their employer, even when their own actions serve as the underlying basis for the employer's discrimination, despite the potential circularity of this argument." *Doe v. Yeshiva Univ.*, No. 22-CV-5405 (PKC), 2023 WL 8236316, at *21 (S.D.N.Y. Nov. 28, 2023) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and collecting cases); *accord Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 214 (N.D.N.Y. 2002) ("Plaintiff must first prove all of the elements of the substantive discrimination claims, in this case, either retaliation or sexual harassment, and that the individual defendants actually participated in the discrimination.").

Having found that Plaintiff's Title VII and NYSHRL failure to promote and retaliation

claims survive Defendants' Motions, the Court considers the conduct of the individual Defendants with respect to those claims in determining their potential liability for this final NYSHRL claim. First, Defendant Andriakos's conduct is integral to Plaintiff's claims for failure to promote. As Plaintiff's supervisor in his capacity as AGA's president for the majority of Plaintiff's time at AGA, and the individual with whom Plaintiff had the most contact with respect to her efforts to become promoted from an AGA employee anesthesiologist to a partner, Defendant Andriakos' conduct appears throughout. Furthermore, although no longer AGA's president at the time Plaintiff's claims of retaliation accrued, Defendant Andriakos played at least a meaningful role in the AGA board decision to take adverse action against Plaintiff by voting to discontinue her employment. Plaintiff's claim is bolstered by her sworn testimony with respect to comments made by Defendant Andriakos pertaining to the possibility of Plaintiff becoming an AGA partner. Defendant Andriakos, in turn, denies making these comments, which further indicates that a material question of fact exists. As such, Defendant Andriakos's Motion with respect to Plaintiff's NYSHRL aiding and abetting discrimination claim is denied.

For similar reasons, Plaintiff's claim of aiding and abetting discrimination under the NYSHRL survives Defendant Wilkins's Motion. First, Defendant Wilkins was AGA's president during the decision to promote Dr. Haddad to a partnership-track position while declining to consider Plaintiff, and records of AGA meetings indicate he was likely at the very least present if not an active participant in the discussions and vote that ultimately constituted AGA's decision to promote Dr. Haddad and not Plaintiff. Furthermore, Defendant Wilkins was the individual whom Plaintiff went to with her two formal complaints about the discriminatory treatment to which she believed that she had been subjected. Although it appears that at least with respect to Plaintiff's allegations of a hostile work environment, Defendant Wilkins's response on behalf of AGA was

effective in stemming the conduct at issue, the decision to deny Plaintiff the ability to rescind her resignation, which Plaintiff contends was retaliation, occurred while Defendant Wilkins was at the helm of AGA as its board president. Thus, the Court finds that Plaintiff's claim against Defendant Wilkins for aiding and abetting discrimination under the NYSHRL survive his Motion.

Finally, Defendant Wurl was similarly one of Plaintiff's supervisors at AGA during the time when her claim for retaliation accrued. Although Defendant Wurl argues that his authority did not extend to decisions to "hire, fire, terminate, promote, transfer, discipline, or demote employees, including Plaintiff[,]" Dkt. No. 56-19 at 12; *see also* Dkt. No. 84 at 6, the record is clear that, very shortly after Plaintiff's formal complaint about Defendant Wurl, he played a role in collecting records of complaints with respect to Plaintiff's conduct that he then forwarded to Defendant Wilkins for the AGA board and its outside counsel to consider in investigating Plaintiff. This conduct is sufficient for a reasonable fact finder to conclude that Defendant Wurl was individually responsible for aiding and abetting discriminatory retaliation against Plaintiff and as such Defendant Wurl's Motion is denied as to this claim.

### G.    New York Assault and Battery

To succeed on his motion for summary judgment as to Plaintiff's claims of assault and battery under New York law, Defendant Wurl is required to demonstrate that he "did not intentionally place plaintiff in apprehension of imminent harmful or offensive contact, and did not intentionally engage in offensive bodily contact without plaintiff's consent." *Minckler v. United Parcel Serv., Inc.*, 132 A.D.3d 1186, 1190 (3d Dep't 2015) (quoting *Guntlow v Barbera*, 76 A.D.3d 760, 766 (2010), *appeal dismissed* 15 N.Y.3d 906 (2010)).

As both parties have adduced evidence in the form of contemporaneous correspondence and sworn testimony supporting their competing versions of events—Defendant Wurl argues that

no offensive contact occurred while Plaintiff maintains that it did—the Court finds that there are disputed issues of material fact that preclude summary judgment as to this claim. The same holds true for Defendant Wurl's argument that others who were present and might have observed the conduct at issue did not testify to having seen what Plaintiff claims occurred, as well as the weight or impact of the text correspondence between Plaintiff and Defendant Wurl following the September 2019 wedding afterparty. The Court cannot make credibility determinations on a motion for summary judgment, and as such Defendant Wurl's Motion is denied as to these claims. *See, e.g.*, *Minckler*, 132 A.D.3d at 1190; *Rosas v. Balter Sales Co. Inc.*, No. 12-CV-6557 (VSB), 2015 WL 12915807, at *13 (S.D.N.Y. Mar. 30, 2015) ("An unwanted touching establishes a claim of battery.") (citing *Aberbach v. Biomedical Tissue Servs., Ltd.*, 48 A.D.3d 716, 718 (2d Dep't 2008)); *Johnson v. White*, No. 06 Civ. 2540 (LAP) (DF), 2010 WL 11586681, at *4-5 (S.D.N.Y. Nov. 18, 2010) (finding that allegations of "severe and continuous intentional sexual harassment by [Defendant], including inappropriate non-consensual touching on multiple occasions, persistent verbal sexual harassment, the spreading of gossip of a sexual nature . . ., and threats of retribution . . . [are] sufficient to support a claim for [ ] battery").

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motions for summary judgment, Dkt. Nos. 55-58, are **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's claims in the Complaint, Dkt. No. 1, for (1) Title VII and NYSHRL discriminatory discharge against all Defendants; (2) Title VII and NYSHRL hostile work environment against all Defendants; and (3) NYSHRL failure to promote against Defendant Wurl are **DISMISSED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the

Local Rules.

**IT IS SO ORDERED.**

Dated:  March 29, 2024
       Albany, New York

Anne M. Nardacci
U.S. District Judge